No. 9 March 19, 2015 1

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

SHAWN GARY WILLIAMS,
*Respondent on Review.*

(CC 08CR0707; CA A145644; SC S061769)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 23, 2014.

David B. Thompson, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Kristin A. Carveth, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

WALTERS, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for consideration of defendant's remaining assignments of error.

_____
 * Appeal from Josephine County Circuit Court, Pat Wolke, Judge. 258 Or App 106, 308 P3d 330 (2013).

**WALTERS, J.**

Defendant was charged with two counts of first-degree sexual abuse for conduct involving a five-year-old child. The state offered evidence that defendant possessed two pairs of children's underwear at the time that he committed the charged acts. Defendant opposed the admission of the evidence as irrelevant under Oregon Evidence Code (OEC) 401[1] and unfairly prejudicial under OEC 403.[2] The trial court admitted the evidence under OEC 404(3)[3] to show that defendant had touched the victim with a sexual purpose rather than accidentally. A jury convicted defendant on both counts. The Court of Appeals reversed, holding that the underwear evidence was not logically relevant to any disputed issue and thus was inadmissible under OEC 401. *State v. Williams*, 258 Or App 106, 308 P3d 330 (2013). The state petitioned for review, which we allowed to determine whether the evidence was admissible under OEC 401, OEC 403, or OEC 404. We conclude that the trial court did not err in admitting the underwear evidence, and we reverse the decision of the Court of Appeals.

The state charged defendant with two acts of sexual abuse: putting his hand down the underwear of the five-year-old victim and touching her vaginal area, and causing the victim to touch defendant's clothed penis. Defendant denied committing either act. During a police interview, defendant admitted that it was possible that he inadvertently could have touched the victim's genital area on three occasions:

---

[1] OEC 401 provides:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

once while he was carrying the victim on his shoulders, once when he and the victim were wrestling, and once when he fell asleep while the victim was lying on top of him. At trial, defendant continued to maintain that he had never put his hand under the victim's underwear or placed the victim's hand onto his clothed penis.

The state sought to introduce two pairs of children's underwear that defendant's landlord had found in defendant's residence after defendant vacated the property. Defendant's landlord testified that one pair of underwear was between the mattress and box spring on defendant's bed and another pair was in a duffel bag. Defendant testified that he did not know where the underwear had come from, but that a female friend and her two young children had spent the weekend at his residence and they possibly had left the underwear behind on that occasion.

Defendant objected to the admission of the underwear evidence, arguing that the evidence did not establish that the underwear was in his possession. He further argued that the underwear was irrelevant to any material issue and that, even if relevant, the evidence was offered only to suggest that defendant had "a problem with little girls"—*i.e.*, that he was a pedophile—and that he acted in conformity with that character in touching the victim in this case. Therefore, defendant asserted, the evidence was unfairly prejudicial and inadmissible under OEC 403.

The state responded that the evidence was not unfairly prejudicial and was admissible under OEC 404(3) to show that defendant had touched the victim with a sexual purpose rather than accidentally. The trial court agreed and admitted the evidence under OEC 404(3). The jury convicted defendant of two counts of first-degree sexual abuse.

Defendant appealed, and the Court of Appeals reversed, holding that OEC 403 and OEC 404(3) apply to only evidence that is logically relevant under OEC 401, and that the underwear evidence was not relevant to a "contested issue in the case." *Williams*, 258 Or App at 112-13.

The court explained that the issue of defendant's intent was not truly contested because defendant had not argued that, if he had touched the victim as alleged, he did so without criminal intent. *Id*. at 113-14. The court further reasoned that, if defendant had performed the charged acts, then those acts "strongly indicate a sexual purpose." *Id*. at 114. The court reversed and remanded for a new trial. *Id*. at 117. This court allowed the state's petition for review.

        Before this court, the state contends that we need not decide whether the underwear evidence was admissible under OEC 404(3) to demonstrate defendant's sexual purpose. The state argues that, in criminal cases, OEC 404(4) supersedes OEC 404(3) and makes relevant "other acts" evidence admissible for *all* purposes. OEC 404(4) provides:

> "In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:
>
> "(a)  [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];
>
> "(b)  The rules of evidence relating to privilege and hearsay;
>
> "(c)  The Oregon Constitution; and
>
> "(d)  The United States Constitution."

        The legislature enacted OEC 404(4) in 1997. Or Laws 1997, ch 313, § 29. Before that date, a court's analysis of the admissibility of relevant "other acts" evidence in a criminal case began with OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*See State v. Johns*, 301 Or 535, 549-50, 725 P2d 312 (1986) (considering OEC 404(3) as first step in analysis). If the evidence was admissible for a nonpropensity purpose

under OEC 404(3), a court then considered whether the evidence nevertheless should be excluded under OEC 403. *See State v. Pinnell*, 311 Or 98, 112-13, 806 P2d 110 (1991) (determination that evidence was admissible under OEC 404(3) must be followed by determination that it was not unduly prejudicial under OEC 403); *see also State v. Shaw*, 338 Or 586, 614-15, 113 P3d 898 (2005) (discussing factors in making determination under OEC 403). OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 404(3) represents "a specific application of OEC 403." *Pinnell*, 311 Or at 106. The purpose of both rules is to exclude evidence that may be unfairly prejudicial to the accused:

> "Bad character evidence (such as other crimes by the accused) is excluded under the propensity rule [of OEC 404(3)], not because it is irrelevant, but because of the risk of unfair prejudice to the accused. The propensity rule's general prohibition of bad character evidence, codified in OEC 404(2) and OEC 404(3), is a specific application of OEC 403. The theory is that the risk that the jury will convict for crimes other than those charged, or because the accused deserves punishment for his past misdeeds, outweighs the probative value of the inference that 'he's done it before, he's done or will do it again.' *** Another reason for the propensity rule in criminal cases is that it is viewed as unfair to require an accused to be prepared not only to defend against the immediate charge, but also to defend or explain away unrelated acts from the past. Additionally, courts are concerned with confusion of issues and undue consumption of time through what may be, in effect, a trial within a trial to ascertain the relationship between the purported other crime and the defendant."

*Id*. at 105-07 (internal citations and footnotes omitted).

In this case, however, the state argues for a different analytical paradigm. The state contends that, in criminal cases, OEC 404(4) now supersedes OEC 404(3), and

that relevant "other acts" evidence is now admissible for all purposes unless, after conducting "due process balancing" under OEC 403, the court determines that the federal Due Process Clause requires the exclusion of that evidence. In the state's view, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires exclusion of "other acts" evidence only when the admission of the evidence would render the trial fundamentally unfair. The state cites *Leavitt v. Arave*, 383 F3d 809, 829 (9th Cir 2004), *cert den,* 545 US 1105 (2005), for the proposition that the admission of "other acts" evidence renders the trial fundamentally unfair when that evidence "goes only to character and there are *no* permissible inferences the jury may draw from it." (Internal quotation marks omitted; emphasis in original). The state argues that, because that circumstance is not present here, and because the underwear evidence is logically relevant under OEC 401, it is admissible under OEC 404(4).

Defendant responds that the state is arguing that, in criminal cases, OEC 404(4) permits the admission of "other acts" evidence for all purposes, including for the sole purpose of establishing a defendant's character and propensity to act accordingly. He contends that, under the state's construction, OEC 404(4) would abrogate both OEC 404(3) and "traditional" balancing under OEC 403. Defendant argues that the legislature did not intend that result and that the federal constitution precludes it. In defendant's view, the underwear evidence proffered by the state is relevant only to establish his character as a pedophile, and it therefore must be excluded under OEC 401, OEC 404(3), OEC 403, and the principles of due process.

We begin our analysis of the parties' arguments with a discussion of the common-law origins of the evidentiary rules precluding or limiting the admission of "other acts" evidence to establish propensity and the extent to which those rules are required by due process. *See Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (for purposes of statutory interpretation, context includes preexisting law). We then return to the text of OEC 404(4) to consider whether it supersedes OEC 404(3) or abrogates or modifies the balancing required by OEC 403.

Courts have excluded "other acts" evidence when offered to show propensity since the late seventeenth century. David P. Leonard, *The New Wigmore, A Treatise on Evidence: Evidence of Other Misconduct and Similar Events* § 1.2, 2 (2009) ("One of the oldest principles of Anglo-American law is that a person 'should not be judged strenuously by reference to the awesome spectre of his past life.'") (quoting M.C. Slough & J. William Knightly, *Other Vices, Other Crimes*, 41 Iowa L Rev 325, 325 (1956)); *see also* 1 John H. Wigmore, *Evidence in Trials at Common Law* § 57, 127 (1st ed 1904) ("Our rule, then, firmly and universally established in policy and tradition, is that the prosecution may not initially attack the defendant's character."). Historians of evidence law frequently cite two seventeenth-century English cases for the origins of that rule: *Hampden's Trial,* 9 How St Tr 1053 (KB 1684), and *Harrison's Trial,* 12 How St Tr 833 (Old Bailey 1692). *See* 1 Wigmore, *Evidence* § 216 at 265 (discussing cases); Leonard, *New Wigmore* § 1.2 at 8 (same). Samuel March Phillipps, the author of one of the earliest English treatises on evidence and one of the first works on the law of evidence published in the United States, also cited an 1810 case, *Rex v. Cole*, for the proposition that

> "[i]t would not be allowable to shew, on the trial of an indictment, that the prisoner has a general disposition to commit the same kind of offence as that charged against him. Thus, in a prosecution for an infamous crime, an admission by the prisoner that he had committed such an offence at another time and with another person, and that he had a tendency to such practice, ought not to be admitted."

Samuel March Phillipps, *A Treatise on the Law of Evidence* (1814) (cited in Leonard, *New Wigmore* § 2.2 at 21).

In 1892, the United States Supreme Court relied on the common law to decide that evidence of the defendants' prior robberies was inadmissible in a trial for murder committed during a robbery, stating:

> "Proof of [the robberies] only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings

charged with crime involving the punishment of death. * * * However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offence charged."

*Boyd v. United States*, 142 US 450, 458, 12 S Ct 292, 35 L Ed 1077 (1892). One year later, the Oregon Supreme Court also condemned the admission of evidence of a defendant's prior crimes to prove that the defendant had acted accordingly in the charged circumstances. *State v. Baker*, 23 Or 441, 442-43, 32 P 161 (1893). In *Baker*, the court explained that "no enlightened system of justice" would permit the admission of such evidence:

> "The general rule is unquestioned that evidence of a distinct crime unconnected with that laid in the indictment cannot be given in evidence against the prisoner. Such evidence tends to mislead the jury, creates a prejudice against the prisoner, and requires him to answer a charge for the defense of which he is not supposed to have made preparation. And while, as Lord Campbell says, 'it would be evidence to prove that the prisoner is a very bad man, and likely to commit such an offense' (*Reg. v. Oddy*, 5 Cox C. C. 210), under no enlightened system of jurisp[r]udence can a person be convicted of one crime on proof that he has committed another."

*Id.*; *accord State v. Saunders*, 14 Or 300, 309, 12 P 441 (1886); *State v. Martin*, 47 Or 282, 285, 83 P 849 (1906). By 1948, that view was widespread. *Michelson v. United States*, 335 US 469, 475-76, 69 S Ct 213, 93 L Ed 168 (1948). As the United States Supreme Court explained, "[c]ourts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of guilt." *Id.* at 475.

When state and federal jurisdictions adopted rules of evidence, those rules often reflected that common-law tradition and precluded the admission of "other acts" to prove propensity. In Oregon, OEC 404(3) and its predecessor statutes have long provided that "other acts" evidence "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but is

admissible for other purposes.[4] Similarly, the Federal Rules of Evidence (FRE) provide that:

> "(1)  *** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> "(2)  *** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

FRE 404(b).[5]

After the adoption of the Federal Rules of Evidence, federal courts generally looked to the text of those rules rather than to the common law or to the federal constitution to determine the admissibility of "other acts" evidence.[6] That changed, however, as to cases in which a defendant is charged with sexual assault or child molestation, when Congress adopted FRE 413 and 414 in 1994. Pub L No 103-322, § 320935, 108 Stat 2135 (1994).[7] Because those rules permit the admission of relevant "other acts" evidence in such cases, federal courts were asked to interpret those rules and determine whether they supersede FRE 404(b),

---

[4] OEC 404(3) was enacted as part of the OEC in 1981. Or Laws 1981, ch 892, § 24. Prior to the enactment of the Oregon Evidence Code, evidence in Oregon was governed by Field's Model Code of Evidence, which dated to 1862. Laird C. Kirkpatrick, *Reforming Evidence Law in Oregon*, 59 Or L Rev 43, 43 (1980).

[5] Congress enacted the Federal Rules of Evidence in 1975. *See* Pub L No 93-595, 88 Stat 1929 (1975).

[6] In 1991, the United States Supreme Court expressly reserved the question whether an evidentiary rule would violate the Due Process Clause if it permitted the use of prior crimes evidence to show a defendant's propensity to commit a charged crime. *Estelle v. McGuire*, 502 US 62, 75 n 5, 112 S Ct 475, 116 L Ed 2d 385 (1991).

[7] FRE 413 provides, in part:

"In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."

FRE 414 provides, in part:

"In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

whether they are subject to FRE 403,[8] and whether they comport with due process.

Federal circuit courts that have considered the matter have held that Congress intended that FRE 413 and 414 supersede FRE 404(b).[9] 2 J.B. Weinstein & M.A. Berger, *Weinstein's Federal Evidence* § 413.04, at 413-10 to -11 (J.M. McLaughlin ed., 2d ed 2010). In addition, federal circuit courts that have considered the matter have decided that evidence admitted under FRE 413 and 414 remains subject to balancing under FRE 403 and that those rules do not violate the Due Process Clause.[10] Christopher B. Mueller

---

[8]  That rule, the text of which is nearly identical to that of OEC 403, provides:

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[9]  *See United States v. Jones*, 748 F3d 64, 70-71 (1st Cir 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation cases."); *United States v. Larson*, 112 F3d 600, 604 (2d Cir 1997) (FRE 414 permits the admission of evidence that would have been excluded under FRE 404(b)); *United States v. Guidry*, 456 F3d 493, 501 (5th Cir 2006) ("Rule 413 relaxes the longstanding bar to propensity evidence restricted by Rule 404(b) and allows the admission of such evidence in trials that involve charges of sexual misconduct."); *United States v. Seymour*, 468 F3d 378, 385 (6th Cir 2006) (FRE 413 and 414 "create an exception to the general ban on propensity evidence contained in Rule 404(b)"); *United States v. Julian*, 427 F3d 471, 486 (7th Cir 2005) ("Rule 413 *** alters the legal landscape with respect to a defendant's prior crimes in cases like this one."); *United States v. Crawford*, 413 F3d 873, 875 (8th Cir 2005) ("Assuming the prior offenses are relevant, Rule 413 supersedes Rule 404's prohibition against character evidence."); *United States v. Sioux*, 362 F3d 1241, 1244 (9th Cir 2004) (FRE 413 through 415 supersede Rule 404(b)'s restriction on the admission of propensity evidence); *United States v. McHorse*, 179 F3d 889, 896 (10th Cir 1999) (intent of Congress in enacting new rules was to supersede FRE 404(b)).

[10]  *See Johnson v. Elk Lake Sch. Dist.*, 283 F3d 138, 155 (3d Cir 2002) (finding that Congress intended FRE 403 balancing be applied and noting that other courts have held that, in absence of FRE 403 balancing, FRE 413 and 414 might violate due process); *United States v. Stamper*, 106 Fed Appx 833, 835 (4th Cir 2004) (FRE 403 must be applied to "other acts" evidence; FRE 413 and 414 are not unconstitutional); *Guidry*, 456 F3d at 503 (affirming application of FRE 403 to "other acts" evidence admissible under FRE 413); *Seymour*, 468 F3d at 385 (agreeing with other federal courts that FRE 403 applies); *United States v. Rogers*, 587 F3d 816, 822-23 (7th Cir 2009) (FRE 403 applies to "other acts" evidence under FRE 413 and 414, but analysis may be conducted differently); *United States v. Mound*, 149 F3d 799, 800-01 (8th Cir 1998) ("Rule 413, subject to the constraints of Rule 403, is constitutional."); *United States v. LeMay*, 260 F3d 1018, 1026 (9th Cir 2001) (subject to Rule 403 balancing, FRE 414 does not violate due process); *United States v. Enjady*, 134 F3d 1427, 1433 (10th Cir 1998) (applying FRE 403 balancing before admitting evidence proffered under FRE 413 or 414 makes admission of such evidence constitutional).

& Laird C. Kirkpatrick, 2 *Federal Evidence* § 4:84 (4th ed 2013) (stating that "several courts have commented that being subject to Rule 403 is crucial to the constitutionality of Rule 413"). The court's reasoning is concisely stated in one of those cases, *United States v. LeMay*, 260 F3d 1018, 1026 (9th Cir 2001): "As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded."

The United States Supreme Court used similar reasoning in a 1990 case. In *Dowling v. United States*, 493 US 342, 352-53, 110 S Ct 668, 107 L Ed 2d 708 (1990), the defendant argued that the admission of "other acts" evidence to prove identity under FRE 404(b) violated his right to due process because it created a constitutionally unacceptable risk that the jury would convict him on an improper basis. The Court disagreed, concluding that "the trial court's authority to exclude potentially prejudicial evidence adequately addresses this possibility." *Id*. at 353.

That historical background is helpful, but it does not resolve the question before us: Whether OEC 404(4) is subject to OEC 404(3) or OEC 403. For that question, we return to the text of OEC 404(4), and the state's first argument, which is that that rule supersedes OEC 404(3). Again, OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is *admissible if relevant* except as otherwise provided by:

"(a)  [OEC 406 through 412[11]] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

---

[11] OEC 406 through 412 set out rules for the admissibility of evidence regarding habit, subsequent remedial measures, settlement offers, offers to pay medical expenses, withdrawn statements or pleas, and, in cases involving sex crimes, the prior sexual history of the victim.

(Emphasis added.) Thus, by its terms, OEC 404(4)(a) makes *relevant* evidence of a defendant's other acts *admissible* in criminal cases, except as otherwise provided by specified rules of evidence. By contrast, OEC 404(3) provides that "other acts" evidence "is *not admissible* to prove the character of a person in order to show that the person acted in conformity therewith." (Emphasis added.)

The state contends that OEC 404(3) is not an exception to the admissibility of evidence under OEC 404(4) and, in addition, because the two rules conflict, OEC 404(3) must give way. *See Carlson v. Myers*, 327 Or 213, 235, 959 P2d 31 (1998) ("Ordinarily, if the legislature enacts a statutory requirement that conflicts with another earlier-enacted statutory requirement, and the conflict is irreconcilable, the earlier statute must yield to the later statute."); *see also* ORS 174.020(2) ("When a general and particular provision are inconsistent * * * a particular intent controls a general intent that is inconsistent with the particular intent."); *Smith v. Multnomah County Board of Commissioners*, 318 Or 302, 309, 865 P2d 356 (1994) (discussing that statute).

Defendant responds that OEC 404(4) and OEC 404(3) can be read together and do not conflict. Defendant contends "other acts" evidence is not *relevant* under OEC 404(4) unless it is relevant for a *permissible purpose* and that OEC 404(3) sets out those permissible purposes.

Considering the text and context of those two rules, the state has the better argument. First, the legislature explicitly made OEC 404(4) subject to certain specified rules of evidence; by contrast, the legislature did not explicitly make OEC 404(4) subject to OEC 404(3). Second, contrary to defendant's argument, OEC 404(4) and 404(3) are in conflict. OEC 404(3) does not provide that "other acts" evidence is *irrelevant*; instead, it provides that "other acts" evidence is *inadmissible* to prove propensity. Those concepts are distinct. OEC 401 defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Evidence that meets that standard of relevance nevertheless may be *inadmissible* for any number of reasons under other provisions of the evidence code. Under OEC 404(3), "other acts" evidence that is offered for the purpose of proving a defendant's character is inadmissible because it is unfairly prejudicial, not because it is irrelevant. *Pinnell*, 311 Or at 105-06. We think it doubtful that the legislature used the word "relevant" in OEC 404(4) to make "other acts" evidence inadmissible to prove propensity. Instead, it is more likely that the legislature used the word "relevant" to incorporate the requirements of logical relevance found in OEC 401.

The legislative history of the enactment of OEC 404(4) supports that understanding. The legislature enacted OEC 404(4) in 1997 in response to this court's anticipated invalidation of Ballot Measure 40 (1996), which, among other provisions, provided crime victims with "the right to have all relevant evidence admitted against criminal defendants." *See Armatta v. Kitzhaber*, 327 Or 250, 254, 959 P2d 49 (1998) (citing Measure 40, § 1(f)).[12] The legislature introduced Senate Bill (SB) 936 as a "legislative paraphrase of selected provisions" of Measure 40 that did not require amendment of the Oregon Constitution. *State v. Fugate*, 332 Or 195, 199, 26 P3d 802 (2001). Two sections of SB 936 related to the concern addressed in section 1(f) of Measure 40, which would have permitted "all relevant evidence [to be] admitted against criminal defendants." Section 1 of SB 936 prohibited trial courts from suppressing evidence obtained through statutory (rather than constitutional) violations,[13]

---

[12] In *Armatta*, this court held that Measure 40 violated the requirement of Article XVII, section 1, of the Oregon Constitution that each amendment shall be voted on separately, and that Measure 40 was therefore invalid. *Id*. at 252.

[13] Section 1 of SB 936 provided:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

(1) The United States Constitution or the Oregon Constitution;

(2) The rules of evidence governing privileges and the admission of hearsay; or

(3) The rights of the press."

SB 936 (1997). That provision is now codified as ORS 136.432.

and section 29 of SB 936 amended OEC 404 to add subsection (4). Opponents of SB 936 understood the bill to have the effect of eliminating the restrictions imposed by OEC 404(3) in criminal cases, and expressed concerns that that result could be unconstitutional. *See* Tape Recording, Senate Committee on Crime and Corrections, SB 936, March 21, 1997, Tape 43, Side A (statement of Jim Arnesen, OCDLA) (SB 936 would "allow the introduction of evidence against the defendant that is not currently allowed ***[, and] the only limitation on keeping that evidence out when the state wants to offer it will be the Federal Constitution and Rule 403 with respect to prejudice."). From the text, context, and legislative history of OEC 404(4), we conclude that the legislature intended OEC 404(4) to supersede OEC 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions.[14]

We reach a different conclusion with respect to the relationship between OEC 404(4) and OEC 403, however. As noted, the Oregon Legislative Assembly adopted OEC 404(4) in 1997, just three years after Congress had adopted FRE 413 and 414. At that time, questions about whether evidence proffered under FRE 413 and 414 was subject to balancing under FRE 403 and whether those rules violated the Due Process Clause were pending in the lower federal courts. The Oregon Legislative Assembly recognized the unsettled state of the law by expressly making OEC 404(4) subject to OEC 403 "to the extent required by the United States

---

[14] In reaching that conclusion, we reject defendant's argument that this court previously has decided that OEC 404(4) does not supersede OEC 404(3). In *State v. Lotches*, 331 Or 455, 494 n 20, 17 P3d 1045 (2000), *cert den,* 534 US 833 (2001), the court stated in a footnote that "OEC 404(4) expands the admissibility of certain other-crimes evidence in criminal cases" but that, under the circumstances of the case, the court "need not address the potential applicability of OEC 404(4)." In *Shaw*, 338 Or at 613-14, the court declined to apply OEC 404(4) because the defendant in that case had committed the alleged crimes prior to the enactment of OEC 404(4). In *State v. Moore/Coen*, 349 Or 371, 389, 245 P3d 101 (2010), the court upheld OEC 404(4) against a defendant's constitutional challenge. The court held that "under OEC 404(4), traditional standards of relevancy are preserved, and in all events, no evidence may be admitted that would violate state and federal constitutional standards." *Id*. The court in that case did not address the continued applicability of OEC 404(3). In *State v. Leistiko*, 352 Or 172, 180 n 6, 282 P3d 857 (2012), the court noted that the state had "not argue[d] that propensity evidence is relevant and thus admissible under OEC 404(4)," and therefore expressed no opinion as to that rule's application.

Constitution."[15] In so providing, the legislature deferred to the courts to determine whether the federal constitution requires the application of OEC 403. Because the United States Supreme Court is the final arbiter of federal constitutional requirements, we must endeavor to determine how that Court would decide the question that the parties present: Whether the Due Process Clause requires the application of OEC 403.

To date, the United States Supreme Court has not addressed that issue. The Court has explicitly reserved the question whether an evidentiary rule would violate due

---

[15] OEC 404(4) also makes the admission of "other acts" evidence subject to the Oregon Constitution. In this case, defendant does not argue that the Oregon Constitution precludes the admission of the underwear evidence. However, we note that two state supreme courts have held that the admission of propensity evidence would violate their states' constitutions. In *State v. Cox*, 781 NW2d 757 (Iowa 2010), the Iowa Supreme Court held that Article I, section 9, of the Iowa Constitution, which provides that "no person shall be deprived of life, liberty, or property without due process of law," requires that "other acts" evidence offered for propensity purposes be excluded:

"Based on Iowa's history and the legal reasoning for prohibiting admission of propensity evidence out of fundamental conceptions of fairness, *** the Iowa Constitution prohibits admission of prior bad acts evidence based solely on general propensity. Such evidence may, however, be admitted as proof for any legitimate issues for which prior bad acts are relevant and necessary."

*Id*. at 767-68. The court explained that Iowa courts

"ground the rejection of propensity evidence on 'fundamental' concerns of fairness and the presumption of innocence. The policy against admissibility of general propensity evidence stems from a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds. A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is. This concept is fundamental to American jurisprudence."

*Id*. (internal quotations and citations omitted).

The Supreme Court of Missouri relied on Article I, sections 17 and 18(a), of the Missouri Constitution, which provide that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information" and that "in criminal prosecutions the accused shall have the right *** to demand the nature and cause of the accusation." *State v. Ellison*, 239 SW3d 603, 606 (Mo 2007). The court explained that, based on those provisions, it "has long maintained a general prohibition against the admission of evidence of prior crimes" and held that "[e]vidence of prior criminal acts is *never* admissible for the purpose of demonstrating the defendant's propensity to commit the crime with which he is presently charged," but may be admissible for other purposes, including that of establishing motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the perpetrator. *Id*. at 606-07 (emphasis in original).

process if it permitted the use of "prior crimes" evidence to prove a defendant's propensity to commit a charged crime. *Estelle v. McGuire*, 502 US 62, 75 n 5, 112 S Ct 475, 116 L Ed 2d 385 (1991). The Court's decision in *Dowling*, 493 US at 353, tells us that an evidentiary rule—such as OEC 403—that requires a trial court to determine whether the potential prejudice of "other acts" evidence outweighs its probative value is sufficient to safeguard a litigant's due process rights. However, that decision does not tell us whether the Due Process Clause *requires* the application of such a rule. Said another way, just because due process is served by a particular evidentiary rule does not mean, at least necessarily, that due process is violated if that rule is not applicable. Thus, we must do our best to determine how the United States Supreme Court would decide that question.

We know that "historical practice" is the primary guide for determining whether an evidentiary rule is so fundamental as to be embodied in the federal constitution. *See Montana v. Egelhoff*, 518 US 37, 43-44, 116 S Ct 2013, 135 L Ed 2d 361 (1996) ("Our primary guide in determining whether the principle in question is fundamental is, of course, historical practice."). In *LeMay*, the Ninth Circuit considered the "historical practice" prohibiting the use of "other acts" to prove the charged crime and concluded that "the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status." 260 F3d at 1025. If this were a case in which defendant had been charged with crimes other than child sexual abuse, we might be persuaded that due process incorporates that historical practice and therefore not only requires the application of OEC 403, but also precludes the admission of "other acts" evidence to prove propensity. However, in this case, defendant is charged child sexual abuse, and the historical practice with respect to such charges is not as clear.[16]

---

[16] In *LeMay*, the court observed that, "[i]n many American jurisdictions, evidence of a defendant's prior acts of sexual misconduct is commonly admitted in prosecutions for offenses such as rape, incest, adultery, and child molestation" by "stretching traditional 404(b) exceptions to the ban on character evidence or by resorting to the so-called 'lustful disposition' exception." *Id*. Accordingly, the court also concluded that "'the history of evidentiary rules regarding a criminal defendant's sexual propensities is ambiguous at best, particularly with regard to sexual abuse of children.'" *Id*. at 1026 (quoting *United States v. Castillo*, 140 F3d 874, 881 (10th Cir 1998)).

We therefore think it prudent, as did the Ninth Circuit in *LeMay,* to turn our attention to the principles that animate the Due Process Clause.

In that regard, the Supreme Court has explained that the admission of evidence that is so extremely unfair that it violates "fundamental conceptions of justice" violates the Due Process Clause. *United States v. Lovasco,* 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977). The Supreme Court also has explained that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997). In *Old Chief*, the Court recognized that such improper grounds include "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Id.* Although the Court was not deciding a constitutional issue in *Old Chief*, its discussion demonstrates how the Court characterizes the prejudice posed by "other acts" evidence. As the Court recognized in *Dowling*, 493 US at 352, the violation of due process that may result from such unfair prejudice is obviated by the application of a rule of evidence that permits a court to consider the risk of prejudice and exclude the evidence when appropriate.

In the absence of controlling Supreme Court precedent, we must determine, as best we can, how that Court would rule if presented with the question before us. We conclude that, in a prosecution for child sexual abuse, the Court would hold that subjecting proffered "other acts" evidence to OEC 403 balancing is a due process requirement. In such prosecutions, the historical record may not definitively establish that it is always improper to admit "other acts" evidence to prove propensity, but it at least demonstrates a historical concern for the prejudice that such evidence poses and the importance that balancing plays in protecting against the harm that may result from its admission. In our view, the only way that a court can ensure that the admission of "other acts" evidence is not unfairly prejudicial and a violation of "fundamental concepts of justice" is to conduct OEC 403 balancing. We therefore hold that that balancing

is required by the Due Process Clause. Even if due process does not categorically prohibit the admission of "other acts" evidence to prove propensity in prosecutions for child sexual abuse, it at least requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice.[17]

Consequently, the admission of evidence under OEC 404(4) remains subject to balancing under OEC 403.[18] When a party objects, under OEC 403, to "other acts" evidence offered under OEC 404(4), a trial court must engage in the balancing anticipated by OEC 403. At one end of the spectrum, "other acts" evidence that is offered for nonpropensity purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. *Shaw*, 338 Or at 614-15. At the other end

---

[17] Given the result that we reach in this case—that the trial court correctly admitted the underwear evidence under "traditional" or "subconstitutional" balancing—we need not further explore the parties' arguments about whether "due process" balancing differs from "traditional" or "subconstitutional" balancing. Evidence that is admissible under "traditional" or "subconstitutional" balancing also would be admissible under any distinct "due process" balancing test.

We also note that *Moore/Coen*, 349 Or at 371, does not make a distinction between "due process" and other balancing. In *Moore/Coen*, the court recognized that, in *Shaw*, 338 Or at 613-14, this court had held that OEC 404(4) was a "change in the law that favors only the prosecution by making the conviction of a defendant more likely." *Id*. at 389. In *Moore/Coen*, the court addressed the constitutionality of OEC 404(4), both facially and as applied, and held that, "under OEC 404(4), traditional standards of relevancy are preserved." *Id*. The court did not make a distinction between "due-process," and "traditional," or "subconstitutional," balancing, and we leave the significance of those distinctions, if any, to another day.

[18] Our understanding of due process requirements is consistent with expectations that legislators may have had when they enacted SB 936, the bill that contained the proposition that became OEC 404(4). As noted, opponents of the bill expressed concerns that it could be unconstitutional. Assistant Attorney General Gardner, who testified on behalf of one of the sponsors of the bill, responded that constitutional law

"require[s] that a trial judge balance the probative evidence versus the prejudicial impact before the judge constitutionally can admit the evidence in a case. *** What SB 936 does, it puts into statute the fact that we are still going to have a balancing test, because that's what [OEC 403] presently requires."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, SB 936, April 17, 1997, Tape 89, Side A (statement of Mark Gardner, Assistant Attorney General).

of the spectrum, as the state recognizes, when "other acts" evidence "goes only to character and there are *no* permissible inferences the jury may draw from it," it is more likely that the evidence will be excluded. Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial

OEC 404(4) nevertheless effects a significant change in the law. Before the legislature enacted OEC 404(4), "other acts" evidence offered to prove a defendant's character and propensity to act accordingly was categorically inadmissible under OEC 404(3). That is no longer the rule. Now, in a prosecution for child sexual abuse, the admission of "other acts" evidence to prove character and propensity under OEC 404(4) depends on whether the risk of unfair prejudice outweighs the probative value of the evidence under OEC 403.[19] That determination must be made on a case-by-case basis. *See, e.g.*, *LeMay*, 260 F3d at 1028 (setting out list of non-exclusive factors that trial courts may consider in weighing the risk of prejudice presented by "other acts" evidence offered under FRE 413 and 414).

In this case, the trial court considered the admissibility of the underwear evidence under both OEC 401 and 403. That mode of analysis was correct under OEC 404(4). As explained, OEC 404(4) makes "other acts" evidence admissible if it is relevant under OEC 401 and admissible under OEC 403.

At trial, the state argued that the disputed evidence was both relevant and admissible to show that defendant had touched the victim with a sexual purpose, and the trial court admitted the evidence. Defendant appealed, and the Court of Appeals decided that the trial court had erred because the underwear evidence was not logically relevant under OEC 401. 258 Or App at 112-13. The court opined that OEC 401 requires courts to determine whether evidence is "logically relevant to a *contested* issue" (emphasis added) and that defendant's intent was not truly at issue in the case. *Id.*

---

[19] We need not, and do not, decide whether OEC 404(4) may be constitutionally applied in other types of prosecutions.

at 112. That was so, the court reasoned, because defendant had not argued at trial that, if he had touched the victim as alleged, he did so without criminal intent. *Id*. at 113-14. Further, the court explained, if defendant had touched the victim as alleged, the nature of his acts strongly indicated that he had done so with a sexual purpose. *Id*. at 114.

On review in this court, the state contends that the Court of Appeals stated the relevance requirement of OEC 401 too strictly, and we agree. OEC 401 makes proffered evidence admissible only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, to prove that defendant committed first-degree sexual abuse, ORS 163.427, the state was required to prove that defendant had subjected the victim, a person under 14 years of age, to "sexual contact."[20] "Sexual contact" is "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6). Accordingly, to prove that element of the charged crimes, the state was required to prove that defendant had touched the victim's genital area or caused her to touch his genital area with a sexual purpose. Thus, any evidence having a tendency to make it more probable that defendant had a sexual purpose when he committed the charged acts is logically relevant under OEC 401.

In *State v. Sparks*, 336 Or 298, 308, 83 P3d 304 (2004), the court held that the defendant's proposed stipulation to an element of the crime "did not have the effect of making otherwise relevant evidence irrelevant," but provided "an alternate form of proof." The court cited Laird C.

---

[20] ORS 163.427 provides, in part:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age; [or]

"* * * * *

"(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person."

Kirkpatrick *Oregon Evidence* § 401.02, Art IV-4 (4th ed 2002) (quoting 1981 Conference Committee to OEC 401) for the proposition that "[t]he fact to which the evidence is directed need not be in dispute." *Sparks*, 336 Or at 308. Thus, under *Sparks*, even though defendant in this case failed to argue explicitly that he lacked a sexual purpose, and even if the acts that defendant was charged with committing suggest that he acted with such a purpose, the underwear evidence is logically relevant as long as it had a tendency to increase the probability that defendant committed the alleged touching to arouse or gratify a sexual desire.[21]

We turn to that question. The state argues that the underwear evidence meets that test of logical relevance because a jury reasonably could infer that defendant's possession of the underwear indicates that defendant has "a sexual interest in little girls" and that defendant had acted from that interest when he touched the victim.

At trial, defendant argued that the underwear that was found in his residence likely had been left behind by a friend with two small children when she and the children spent the night. Defendant also disputed the state's argument that the underwear had an inherently "sexual meaning" and argued that the state's submission of the underwear "suggest[ed] an inference based on very misleading information." On review, however, defendant does not explicitly press those arguments or contend that a jury could not infer from the presence of the children's underwear that defendant had a sexual interest in children. Instead, defendant argues that there is no difference between asserting that defendant had a "sexual interest in little girls" and

---

[21] As explained, the fact that such evidence is logically relevant under OEC 401 does not make it admissible under OEC 403. In conducting the balancing inquiry under OEC 403, a trial court may consider whether other evidence that does not carry the same risk of unfair prejudice is available to prove an element of the charged crime. For instance, in *Old Chief*, 519 US at 174, the United States Supreme Court held that a trial court had abused its discretion in rejecting the defendant's stipulation to an element of the charged crime (in that case, a prior conviction), when the stipulation met all the government's requirements for proving that element and the evidence proffered by the government "raise[d] the risk of a verdict tainted by improper considerations." The Court directed trial courts to weigh "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind." *Id*. at 184.

asserting that he is a pedophile. No matter how the argument is phrased, defendant insists, the state's purpose was to suggest that his character is such that he has an interest in sexually abusing children and that he acted accordingly on the charged occasions.

In this case, there is a slim but distinct difference between using the underwear evidence to establish defendant's character and propensity to act accordingly, and offering that evidence to establish defendant's sexual purpose. First, in this case, defendant's sexual purpose is an element of the charged crimes. The state did not offer the evidence to establish that defendant committed the charged acts; it offered the evidence to prove an element of the charged crimes—defendant's sexual purpose. Second, the state was required to prove that defendant had acted with a sexual desire that was aroused or gratified by contact with children. Because most adults do not have such a desire, the state was entitled to prove that defendant is an adult who does. The fact that defendant has a sexual interest in children would not, alone, establish that defendant acted on that interest in the charged circumstances, but it is a fact that is logically relevant to that issue.

If the jury inferred from the underwear evidence that defendant had a sexual interest in children generally, then the jury could take defendant's interest into consideration in deciding whether defendant had acted on that interest and with that purpose on the charged occasion. Defendant is correct that, if the jury found that defendant had committed the charged acts, those acts themselves are additional, and perhaps more persuasive, evidence of defendant's sexual purpose. However, as noted, that stronger evidence does not make the underwear evidence logically irrelevant; the evidence meets the minimal requirements of OEC 401.

At trial, after determining that the underwear evidence was relevant under OEC 401, the trial court conducted the balancing required by OEC 403 and concluded that the evidence was admissible. Defendant does not contend that the trial court erred in its OEC 403 analysis, and we therefore do not consider that issue on review.

In summary, we conclude that OEC 404(4) supersedes OEC 404(3) in a criminal case except to the extent required by the state or federal constitution. In a prosecution of child sexual abuse, the federal constitution requires that a trial court determine whether the risk of unfair prejudice posed by the evidence outweighs its probative value under OEC 403. In this case, the trial court did not err in admitting the underwear evidence.

As noted, because it concluded that the trial court had erred in admitting the underwear evidence, the Court of Appeals reversed the judgment of conviction and remanded for a new trial. *Williams*, 258 Or App at 117. The Court of Appeals therefore did not address three additional assignments of error that defendant had raised on appeal. *See id*. We reverse the decision of the Court of Appeals and remand the case to that court for consideration of those remaining assignments of error.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for consideration of defendant's remaining assignments of error.