Argued and submitted June 15, 2021, vacated and remanded February 2,
petition for review denied June 2, 2022 (369 Or 785)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ISIDRO WILLIAM CAMPOVERDE,
*Defendant-Appellant.*

Coos County Circuit Court
19CR17124; A171801

505 P3d 466

Defendant appeals a judgment of conviction for possession of methamphetamine and challenges the denial of his motion to suppress evidence obtained during a traffic stop. Following *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), which was decided after defendant's trial, defendant argues for the first time on appeal that deputies unlawfully expanded the scope of the traffic stop when they undertook investigative activities unrelated to the traffic citation for which the deputies did have constitutional justification. The state responds that plain-error review is unavailable where it is not obvious that the challenged evidence derived from the alleged constitutional violations. *Held*: The deputies' challenged actions violated the subject-matter limitations imposed by *Arreola-Botello*, and that violation was apparent on the face of the record. The Court of Appeals exercised its discretion to correct that error. Where the state did not have notice of its obligation to develop a record regarding whether the challenged evidence was unrelated to that unlawful conduct, however, the court remanded for the trial court to engage in the necessary factfinding and to reconsider defendant's suppression motion in light of *Arreola-Botello*.

Vacated and remanded.

Martin E. Stone, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and DeVore, Senior Judge.*

_____
* Lagesen, C. J., *vice* DeHoog, P. J.

DeVORE, S. J.

Vacated and remanded.

**DeVORE, S. J.**

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894(2)(b) (2018), *amended by* Ballot Measure 110 (2020), Or Laws 2021, ch 591, § 39.[1] He assigns as plain error the denial of his motion to suppress evidence obtained during a traffic stop. For the first time on appeal, he argues that deputies unlawfully expanded the scope of their investigation by engaging in investigative activities and inquiries unrelated to the purpose of the stop. The state responds that defendant's argument does not qualify for plain-error review because it is not obvious that the challenged evidence derived from the deputies' allegedly unlawful conduct. As we will explain, we agree with defendant that, in light of the change in the law as articulated in *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), the deputies' investigative activities violated defendant's rights under Article I, section 9, of the Oregon Constitution and that the error is apparent on the record. We exercise our discretion to correct the error. Under the circumstances of this case, however, we agree with the state that remanding to the trial court for reconsideration of defendant's motion to suppress in light of *Arreola-Botello* is the appropriate disposition. As a result, we vacate and remand for further proceedings.

We review the denial of a motion to suppress for legal error and are bound by the trial court's factual findings if there is any constitutionally sufficient evidence to support them. *State v. Escudero*, 311 Or App 170, 171, 489 P3d 569 (2021).

The relevant facts are undisputed. Coos County Deputies Whitmer and Smith pulled over defendant's car for failure to display a front license plate. Whitmer approached the driver's side of defendant's car and asked to see defendant's driver's license. Defendant told Whitmer that he had a suspended license. While Whitmer contacted dispatch to confirm defendant's license suspension, Smith, standing by the passenger side of the car, overheard dispatch report

---

[1] Defendant does not challenge his conviction of driving while suspended or revoked, ORS 811.182, on appeal. All references in this opinion to ORS 475.894 are to the 2018 version of the statute.

that defendant's license was suspended on a misdemeanor level and that defendant was on probation for drug-related offenses. Smith asked defendant for consent to search the car, and defendant refused. When Whitmer returned to the driver's side of defendant's car and learned that defendant had denied permission to search his car, Whitmer contacted defendant's probation officer. Defendant again refused consent to search his car, at which point defendant's probation officer placed a detainer on defendant for leaving Douglas County and for his refusal to consent to a search. Whitmer arrested defendant for driving while suspended and pursuant to the probation officer's detainer.

Once defendant was out of the car, Smith, still standing at the front passenger window, saw an orange straw in the center console that had previously been blocked from view by defendant's body. The straw was cut to a length shorter than a standard drinking straw, and a white crystalline material appeared on the tip of the straw. Based on his training and experience, Smith determined that the straw was an object that likely was used to ingest methamphetamine. The deputies searched the vehicle and found two small bags containing a usable amount of methamphetamine.

Before trial, defendant moved to suppress the evidence obtained as a result of the traffic stop, arguing, in part, that the "ensuing search was overly intensive in time and scope for a stop on the basis of a lack of a front plate" and that the white residue on the straw would not have been visible from Smith's position. The trial court denied defendant's motion to suppress, concluding that Smith's observation of the straw and the subsequent search were lawful based on the state's plain view argument. The trial court held that it did not

> "have any reason to believe that the officer didn't see that straw angling up and was able to look inside the straw and see the crystalline substance.
>
> "I think the officer had probable cause to pull over the defendant, given the missing front license plate, with the Oregon plates on the back. I agree with the facts recited by the deputy district attorney as far as what the testimony was and what I believe was true, and the search was lawful ***."

After trial in this case, the Oregon Supreme Court decided *Arreola-Botello*, in which the court held that

> "for the purposes of Article I, section 9, all investigative activities, including investigative inquiries, conducted during a traffic stop are part of an ongoing seizure and are subject to both subject-matter and durational limitations. Accordingly, an officer is limited to investigatory inquiries that are reasonably related to the purpose of the traffic stop or that have an independent constitutional justification."

365 Or at 712. The court thus rejected the "unavoidable lull" doctrine, under which officers had previously been permitted to ask unrelated investigatory questions without constitutional justification as long as the officer did not delay the processing of a citation or extend the duration of the traffic stop. *Id.*

On appeal, defendant acknowledges that he failed to preserve a subject-matter limitation argument before the trial court and so he seeks plain-error review. He argues that the deputies' request for consent to search the car and the call to defendant's probation officer regarding defendant's refusal of the search request were unrelated to the traffic citation or driving while suspended investigations for which the deputies did have constitutional justification.

The state does not argue that those investigative actions were related to the lawful bases for the stop. Instead, the state presents a novel argument couched in the language of plain error. The state argues that plain-error review is unavailable on this record because "it is not obvious that the challenged evidence * * * derived from the alleged Article I, section 9, violation." The state argues that the record is undeveloped as to whether Smith was positioned to see the straw irrespective of his request for defendant's consent because defendant failed to make the argument he now advances on appeal. At oral argument, the state asked that, even if we did find an *Arreola-Botello* violation on the face of the record, we remand the case to allow the trial court to consider whether Smith was in position to see the straw based on the lawful investigation of defendant's suspended license, and thus whether the resulting evidence was unrelated to any unlawful conduct.

We agree with defendant that the deputies' violation of his rights under Article I, section 9, is an error apparent on the face of the extant record, and we exercise our discretion to correct it. In agreement with the state, however, we conclude that this is an occasion on which it is appropriate to reverse and remand for further proceedings.

The standards for plain-error review are familiar. *See* ORAP 5.45(1) (allowing for discretionary plain-error review). To qualify for plain-error review, three requirements must be met: (1) the error must be an error of law; (2) the point must be obvious and not reasonably in dispute; and (3) the error cannot require us to go outside the record or select among competing inferences. *State v. Terry*, 333 Or 163, 180, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002). If those requirements are met, then we consider whether to exercise our discretion to remedy the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

In *State v. Hallam*, 307 Or App 796, 799, 479 P3d 545 (2020), the defendant had been stopped by police for a traffic infraction. While one deputy wrote the traffic citation and ran a criminal-history check, another deputy spoke to the defendant, asked about her potential drug use and weapon possession, and received consent to search her car and purse. *Id.* at 799-800. The deputy found methamphetamine in the defendant's purse. *Id.* at 800. At a pretrial suppression hearing, like defendant in this case, the defendant did not raise a subject-matter limitation argument as to the deputy's investigative actions related to the search for drugs. *Id.* at 803. We concluded on appeal, however, that the deputies' questions regarding defendant's drug and weapon possession were unrelated to the basis of the traffic stop and were not justified by independent reasonable suspicion that the defendant either possessed drugs or a weapon. *Id.* at 806-07. In light of the change in law brought by *Arreola-Botello*, that violation of defendant's rights under Article I, section 9, was apparent on that record. *Id.* at 807.

Like *Hallam*, the deputies' investigatory actions challenged by defendant in this case were unrelated to the lawful bases for defendant's stop. There is no dispute that the deputies had probable cause to stop defendant for a traffic

infraction for failing to display a front license plate on his car or that, upon requesting identification to investigate that infraction, the deputies discovered that defendant's license was suspended. However, the deputies' request for consent to search defendant's car for drugs and their resulting call to defendant's probation officer to report his refusal of consent were unrelated to either the investigation of a missing front license plate or a suspended license.

To have been permissible, the deputies' actions needed to have been supported by reasonable suspicion that defendant possessed methamphetamine. *Arreola-Botello*, 365 Or at 712. The state had the burden of proving that the deputies subjectively believed that defendant had committed or was about to commit a crime and that the belief was objectively reasonable in light of the totality of circumstances at the time of the stop. *Hallam*, 307 Or App 796. The state, however, did not put forward an argument that the deputies had reasonable suspicion to suspect that defendant possessed methamphetamine or some other illicit substance at the time of the challenged actions.

Therefore, as in *Hallam*, the deputies' actions violated the subject-matter limitations imposed by *Arreola-Botello*, and that violation is apparent on the face of the record.[2] We exercise our discretion to correct the error. Smith's plain view of the straw occurred after and, at least in part, as a result of defendant exiting his car while being arrested pursuant to the unlawfully obtained probation detainer. Defendant's constitutional rights are affected, and defendant's conviction was obtained based on evidence that followed, at least in part, that constitutional violation. *See Ailes*, 312 Or at 382 n 6 (discussing factors that a court may consider when exercising its discretion to review plain error).

The state argues that any error is not obvious on this record where defendant was also lawfully being arrested for

_____

[2] That is so even where the trial court did not expressly rely on the "unavoidable lull" doctrine below. To find that an error is plain "does not imply any mistake by a trial court." *State v. Zavala*, 361 Or 377, 380 n 1, 393 P3d 230 (2017). "Instead, it is a label that an appellate court uses when it decides that a party is entitled to a benefit of a change in the law." *Id.*

driving with a suspended license. Under such compound circumstances, the state argues that it is not obvious that the evidence from the search of the car was unlawfully obtained and that it is possible that Smith would have been in the same position to view the straw solely because of defendant's lawful arrest for driving while suspended. Because that prospect coexisted, the state argues that it is possible on this record that the evidence was obtained only through that lawful chain of events and the plain view of the straw was unrelated to any unlawful conduct.

As the state acknowledged at oral argument, its argument against plain error, at bottom, is based on an attenuation argument. It is a version of an "inevitable discovery" argument. *See, e.g.*, *State v. Hudson*, 253 Or App 327, 345-46 & n 10, 290 P3d 868 (2012) (even if consent requests were impermissible, the inevitable discovery doctrine applied). For a pair of reasons, we conclude that an attenuation argument does not prevent plain-error review in this case.

First, the potential that subsequent police conduct may be tenuously related to or unrelated to the unlawful conduct does not obviate the fact that the preceding conduct was unlawful. "When police obtain evidence of a crime after having violated a defendant's rights under Article I, section 9, of the Oregon Constitution, it is presumed that that evidence is tainted and must be suppressed." *State v. Lambert*, 265 Or App 742, 338 P3d 160 (2014) (citing *State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014)). The potential that Smith might have been in position to view the straw regardless of the challenged conduct has no bearing on our determination that the prior request for consent to search the car and the call to the probation officer were impermissible and unrelated to the lawful bases for stopping defendant at that time—failing to display a license plate and driving on a suspended license.

Second, the state bears the burden of proving that evidence obtained after violating a defendant's constitutional rights was not the product of police exploitation of the unlawful conduct. *Unger*, 356 Or at 76. The state's argument on appeal that it should not be held to that burden—because

defendant failed to preserve his argument that the evidence seized was tainted by the unlawful subject-matter-limitation violations—displaces the state's burden. The state's plain-error argument depends upon an unspoken presumption, in the absence of defendant's objection, that the state is entitled to attenuation. That argument is unavailing. *See id.*; *see also Lambert*, 265 Or App at 750-51 (explaining that a defendant is not required to separately, affirmatively demonstrate that the evidence obtained was also flawed because it flowed from the unlawful conduct).

Although the state's attenuation argument does not prevent plain-error review, we conclude that the state's request for a remand for further proceedings, to develop the record as to whether Smith might have been in position to plainly view the straw, regardless of the unlawful conduct, is appropriate. At oral argument before this court, defendant argued that it was inappropriate to remand for further factfinding where Oregon courts have repeatedly held that it is the state's burden to present evidence of attenuation to the trial court. *See Unger*, 356 Or 59, 74-75; *Lambert*, 265 Or App at 750; *Escudero*, 311 Or App at 174. Defendant correctly argued that, because of that burden, we have concluded in other instances that a remand for further proceedings regarding the relation of evidence to unlawful conduct would unfairly benefit the state and "invite piecemeal presentation *** of suppression disputes." *State v. Marshall*, 254 Or App 419, 434, 295 P3d 128 (2013). That is so, however, only where the state had the obligation and "*the opportunity*" to develop a record as to inevitable discovery before the trial court. *Id.* (emphasis added). Where the unlawful actions leading to suppression are reviewed in a plain-error posture due to intervening Supreme Court case law, the state did not have such an opportunity or obligation below. The state had no notice at the time of trial of its obligation to develop a record that the subsequent discovery of evidence may have been unrelated to conduct that was considered lawful at the time of trial. Under those unique circumstances, allowing further consideration of that matter would not invite general piecemeal presentation of suppression issues in most cases. In the circumstances of this case, therefore, we agree with the state that remanding to

the trial court for reconsideration of defendant's motion to suppress and the opportunity to develop the record in light of *Arreola-Botello* is the appropriate disposition.

In sum, the deputies' request for consent to search defendant's car and the resulting call to defendant's probation officer were unrelated to the subject-matter of the lawful bases of the stop and thus violated defendant's rights under Article I, section 9. It was error for the trial court to deny defendant's motion to suppress. That error is apparent on the face of the record, and we exercise our discretion to correct it. Where the state did not have notice of its obligation to develop a record regarding whether the challenged evidence was unrelated to that unlawful conduct, however, we remand for the trial court to engage in the necessary factfinding and to reconsider defendant's suppression motion in light of *Arreola-Botello* and consistent with this opinion. Therefore, we vacate and remand.

Vacated and remanded.